### Clarence B. Caddagan v. City of Chicago.

#### Gen. No. 12,793.

1. BRIDGE—*duty of municipal corporation with respect to care as to furnishing and maintaining.* A municipal corporation should exercise reasonable care in furnishing and maintaining a bridge reasonably safe for the use of the public.

Action on the case for personal injuries. Error to the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed December 11, 1906.

WILLIAM J. HYNES and EDWARD C. HIGGINS, for plaintiff in error.

JOHN F. SMULSKI, for defendant in error; JOSEPH B. DAVID, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the plaintiff from a judgment upon a directed verdict for the defendant in an action

on the case for personal injuries. Such injuries were sustained by plaintiff's legs being caught between the north end of the State street bridge of defendant and the street approach thereto, and plaintiff alleged, were so sustained, by reason of the improper and negligent construction of said bridge.

The bridge turned upon a pivot, stood north and south when closed, could be swung either way for the passage of a vessel, and to close the bridge it was sometimes swung back into place and sometimes swung half way around. On either side of the bridge was a sidewalk eight or ten feet wide, made of planks laid crosswise of the bridge, upon stringers running lengthwise of the bridge. These stringers were eight or ten inches high, fifteen inches apart, and appear to have rested upon a floor of the same level as the roadway of the bridge. At each end of a sidewalk of the bridge the space between the planks which made the sidewalk and the planks which made the floor upon which the sidewalk stringer rested was left open, thus leaving, immediately below the floor of the walk, open spaces eight or ten inches high and fifteen inches wide across the entire width of the sidewalk. Between the sidewalks of the bridge was a roadway for teams. At each end of the bridge was a roadway for teams, and sidewalks corresponding in width and level with the roadway and sidewalks of the bridge respectively, but the edge of the roadway of the street immediately north of the bridge was somewhat worn down.

It appears from the evidence that in closing the bridge it often happened that persons passed from the bridge to the street and from the street to the bridge while the bridge was turning and before it was completely closed.

Plaintiff at the time of the accident was nine years old. When he was injured, defendant was closing the bridge by turning the north end of the bridge to

the east and he was injured in attempting to step
from the north end of the bridge sidewalk to the
roadway of the street. 'As a result of the construc-
tion above described, the level of the bridge sidewalk
upon which plaintiff stood was eight or ten inches
above the level of the roadway of the street, but on
a level with the east sidewalk of the street. Extend-
ing across the north end of the sidewalk immediately
below the floor of. the walk were the open spaces
eight or ten inches high and fifteen inches wide, above
described. The bridge had turned so far that plaint-
iff stepped with his left foot upon the roadway of
the street near its east edge, near the line that sepa-
rated the roadway from the east sidewalk of the
street. His foot slipped under him backward and was
caught in one of the openings at the north end of.
the bridge sidewalk. The bridge was still turning
when this happened, but upon an alarm it was quickly
stopped while it still had five or six feet to go to be
completely closed. When it was stopped it was found
that plaintiff's left leg had been caught between the
sidewalk of the bridge and the sidewalk of the street,
and so. crushed and injured that it was necessary to
amputate it; that his right foot was also caught in a
hole in the end of the bridge sidewalk, but the bridge
was stopped before that leg reached the street side-
walk and the injury to that leg was not severe.

The contention of appellant is, that the question
whether the defendant was guilty of negligence in
maintaining and operating the bridge in question,
with the openings at the end of the bridge sidewalks
which were in this bridge, was a question of fact for
the jury, and therefore the court erred in directing
a verdict for the defendant.

There is no question as to the rule of law in a
case of this kind, where a verdict of not guilty is
directed.

There is here no question as to the evidentiary

facts, but only the question whether from such facts the jury might find, against the defendant, the ultimate fact of negligence; might properly find, as a fact, that it was negligence for the defendant to maintain and operate this bridge, at the place and in the manner in which it was operated, with the openings in the ends of the bridge sidewalk, which were in this bridge.

The duty of the defendant was to use reasonable care to furnish and maintain a bridge which was reasonably safe for public use. We do not think that this duty required the defendant to close the openings in the ends of a bridge sidewalk below the floor of the walk, but think that the bridge in question, constructed as it was, was reasonably safe for public use; that the jury could not properly find that such construction was improper or dangerous, and therefore could not find that the defendant was guilty of negligence in respect to said bridge. It follows from what has been said that, in our opinion, the court properly directed a verdict for the defendant, and the judgment will be affirmed.

*Affirmed.*